UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ADRIENNE FELTY,

                    Plaintiff,

          -against-

REGENERON PHARMACEUTICALS, INC.,

                    Defendant.

Case No. 18-cv-05667 (NSR)(JCM)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022-4834
(212) 583-9600

*Attorneys for Defendant*

On the Brief:
   Craig R. Benson
   Shawn Matthew Clark

TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 3

ARGUMENT ............................................................................................................................. 3

I.     FELTY CANNOT ESTABLISH THAT SHE WAS SUBJECTED TO A
      HOSTILE WORK ENVIRONMENT BECAUSE OF HER GENDER .......................... 3

II.    FELTY CANNOT ESTABLISH THAT SHE WAS SUBJECTED TO
      UNLAWFUL DISPARATE TREATMENT BASED ON HER GENDER
      BECAUSE SHE DID NOT SUFFER A MATERIALLY ADVERSE
      EMPLOYMENT ACTION ............................................................................................ 8

      A.     Felty Did Not Suffer An Adverse Employment Action ........................................ 9

      B.     Felty Was Not Constructively Discharged From Her Employment .................... 11

III.   FELTY'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW ....................... 13

      A.     Felty's March 2017 Complaint To Human Resources ........................................ 13

      B.     Felty's Alleged Complaint To Fletcher ............................................................... 14

IV.   FELTY'S NEW YORK CITY HUMAN RIGHTS LAW CLAIMS SHOULD BE
      DISMISSED BECAUSE SHE DID NOT LIVE OR WORK IN NEW YORK
      CITY ........................................................................................................................... 15

CONCLUSION ......................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002)................................................................................3, 4

*Bickerstaff v. Vassar Coll.*,
   196 F.3d 435 (2d Cir. 1999)...................................................................................4

*Chenette v. Kenneth Cole Prods., Inc.*,
   345 F. App'x. 615 (2d Cir. 2009) ........................................................................12

*Day v. City of New York*,
   No. 15 CIV. 4399 (GBD) (HBP), 2015 WL 10530081 (S.D.N.Y. Nov. 30,
   2015) ..................................................................................................................9, 10

*Duffy v. Drake Beam Morin*,
   No. 96 CIV. 5606 (MBM), 1998 WL 252063 (S.D.N.Y. May 19, 1998) ..............16

*Ferraro v. Kellwood Co.*,
   No. 03 CIV. 8492(SAS), 2004 WL 2646619 (S.D.N.Y. Nov. 18, 2004) ................11

*Fincher v. Depository Trust & Clearing Corp.*,
   604 F.3d 712 (2d Cir. 2010)...................................................................................3

*Fried v. LVI Servs., Inc.*,
   No. 10–CV–9308, 2011 WL 4633985 (S.D.N.Y. Oct. 4, 2011)...............................15

*Galabya v. N.Y.C. Bd. of Educ.*,
   202 F.3d 636 (2d Cir. 2000)..............................................................................9, 10

*Graham v. Long Island R.R.*,
   230 F.3d 34 (2d Cir. 2000).....................................................................................5

*Hoffman v. Parade Pubs.*,
   15 N.Y.3d 285, 933 N.E.2d 744 (2010).................................................................15

*Jones v. SEIU Local 1199*,
   No. 08CV6179-CJS, 2009 WL 5171882 (W.D.N.Y. Dec. 22, 2009) .....................15

*Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*,
   716 F.3d 10 (2d Cir. 2013)...................................................................................14

*Lennert–Gonzalez v. Delta Airlines, Inc.*,
   No. 11 Civ. 1459 (JMF), 2013 WL 754710 (S.D.N.Y. Feb. 28, 2013) ...................4

i

*Lewis v. N. Gen. Hosp.*,
  502 F. Supp. 2d 390 (S.D.N.Y. 2007).....................................................................8

*Malena v. Victoria's Secret Direct, LLC*,
  886 F. Supp. 2d 349 (S.D.N.Y. 2012)..............................................................13, 14

*McGill v. Univ. of Rochester*,
  600 F. App'x 789 (2d Cir. 2015) ...........................................................................8

*McGullam v. Cedar Graphics, Inc.*,
  609 F.3d 70 (2d Cir. 2010)..................................................................................4, 7

*Milne v. Navigant Consulting*,
  No. 08 Civ. 8964 (NRB), 2010 WL 4456853 (S.D.N.Y. 2010) .............................10

*Nakis v. Potter*,
  No. 01 CIV. 10047 (HBP), 2004 WL 2903718 (S.D.N.Y. Dec. 15, 2004) .............4

*O'Neal v. State Univ. of N.Y.*,
  No. CIV A CV-01-7802 (DGT), 2006 WL 3246935 (E.D.N.Y. Nov. 8, 2006)...........6, 11, 12

*Patane v. Clark*,
  508 F.3d 106 (2d Cir. 2007) (NYSHRL) ...............................................................3

*Petyan v. N.Y.C. Law Dep't*,
  No. 14-CV-1434 (GBD) (JLC), 2015 WL 1855961 (S.D.N.Y. Apr. 23, 2015).................9, 10

*Ragin v. E. Ramapo Cent. Sch. Dist.*,
  No. 05 CIV. 6496 (PGG), 2010 WL 1326779 (S.D.N.Y. Mar. 31, 2010).......................10, 11

*Robles v. Cox & Co.*,
  841 F. Supp. 2d 615 (E.D.N.Y. 2012) ..................................................................15

*Schwapp v. Town of Avon*,
  118 F.3d 106 (2d Cir. 1997)....................................................................................4

*Shah v. Wilco Sys., Inc.*,
  27 A.D.3d 169 (1st Dep't 2005) ............................................................................15

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338 (2013).............................................................................................13

*Wahlstrom v. Metro–North Commuter R.R. Co.*,
  89 F. Supp. 2d 506 (S.D.N.Y. 2000)......................................................................16

*Whidbee v. Garzarelli Food Specialties, Inc.*,
  223 F.3d 62 (2d Cir. 2000).............................................................................11, 12

*White v. Pacifica Found.*,
   973 F. Supp. 2d 363 (S.D.N.Y. 2013)......................................................................................9, 10

## PRELIMINARY STATEMENT

Plaintiff Adrienne Felty, a former Associate Manager, Quality Auditing for Defendant Regeneron Pharmaceuticals, Inc., who voluntarily resigned her employment with Regeneron in July 2017, commenced this action against Regeneron alleging that she was subjected to unlawful discrimination based on her gender, and unlawful retaliation for complaining of discrimination. For the reasons that follow, Felty's Complaint should be dismissed in its entirety.

Felty's claims in this action are largely premised on a single incident during which a subordinate employee (who was based in Ireland) allegedly raised his voice at her. The single incident was neither severe nor pervasive, and there is no evidence that it was motivated by Felty's gender. Indeed, Felty admits that the subordinate did not make any sexist remarks while raising his voice, and she never heard him make a sexist comment to anyone at Regeneron. She postulates that the subordinate employee raised his voice because she is a woman based on her alleged observations of the subordinate employee's interactions with male colleagues who did not supervise him, and her allegation that the subordinate employee yelled at his two female supervisors, including Felty. But, the mere fact that the subordinate employee yelled at his supervisors, who happen to be female, does not without more demonstrate that he harbored some gender-based animus, as opposed to a problem with authority or a personal animosity toward Felty and his prior manager—neither of which are actionable under the anti-discrimination laws.

In any event, immediately following Felty's complaint about the subordinate employee's conduct to Regeneron's Human Resource Department, Regeneron undertook a prompt and thorough investigation, and, consistent with applicable Irish law, recommended a disciplinary hearing to address the subordinate employee's insubordinate conduct. In the interim, Felty and the subordinate employee, who were separated by a literal ocean, had no in-person interaction.

1

On the eve of his disciplinary hearing in Ireland, approximately two months after Felty's internal complaint, the subordinate employee resigned his employment rather than face discipline or termination. On these facts, Felty cannot demonstrate that she was subjected to an objectively hostile work environment based on her gender.

Felty also cannot demonstrate that she was subjected to disparate treatment because of her gender. Felty did not suffer any adverse employment action during her employment. She voluntary resigned her employment seventeen weeks after the single incident, and more than seven weeks after the alleged "harasser" had already resigned his employment. At the time she resigned her employment, Felty was aware that the subordinate employee was no longer an employee of Regeneron. Given the relatively benign level of the alleged misconduct, and Regeneron's appropriate action when apprised of the same, Felty cannot prove that Regeneron made her working conditions so intolerable that she was in effect constructively discharged from her employment. Indeed, upon learning that Felty intended to resign her employment, Felty's manager expressed her disappointment, and Regeneron's Human Resources Department explored options to retain Felty.

Felty also cannot prove that she was subjected to retaliation. Plainly, Felty never experienced any adverse employment action. In addition, Felty did not even engage in the requisite underlying protected activity. Her complaint to Human Resources did not involve allegedly discriminatory conduct. Instead, she generally complained about the subordinate's work performance and insubordinate conduct. Her complaint did not put Regeneron on notice of any alleged discrimination, and Regeneron's Human Resources Business Partners did not understand her complaint to be a complaint of discrimination.

Finally, Felty's New York City Human Rights Law claims must be dismissed because Felty did not work or live in New York City, and none of the alleged conduct about which Felty complains occurred in New York City.

Consequently, for these reasons, and because there are no genuine issues of material fact regarding Felty's claims, the Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

Facts relevant to this motion are set forth in the Defendant's Rule 56.1 Statement of Material facts, dated December 13, 2019 ("Def. 56.1"), and the accompanying declarations of Theresa Thompson ("Thompson Decl."), Filomena Grady ("Grady Decl.") and Linda Fletcher ("Fletcher Decl.").

## ARGUMENT

## I.   FELTY CANNOT ESTABLISH THAT SHE WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT BECAUSE OF HER GENDER

Felty's hostile work environment claim should be dismissed because she cannot demonstrate that she was subjected to an objectively severe or pervasive hostile work environment. To establish a hostile work environment claim under Title VII and the New York State Human Rights Law ("NYSHRL"), Felty "must show that [her] workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002); *see also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (NYSHRL). In addition to being subjectively hostile and abusive, the alleged conduct must be objectively severe or pervasive. *Patane*, 508 F.3d at 113. In other words, to establish her hostile work environment claim, Felty must produce evidence of "more than a few isolated incidents" or "evidence of a single incident that is extraordinarily severe." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 724

(2d Cir. 2010); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (to prove a hostile work environment claim plaintiff must alleged more than "sporadic . . . slurs;" she must demonstrate that there was a "steady barrage of opprobrious . . . comments") (internal citation omitted).

Felty also must demonstrate that the alleged severe or pervasive hostility was motived by her gender. *See Alfano*, 294 F.3d at 373 ("it is 'axiomatic' that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex"). Mere "[h]ostility or unfairness in the workplace that is not the result of discrimination against a protected characteristic is simply not actionable." *Nakis v. Potter*, No. 01 CIV. 10047 (HBP), 2004 WL 2903718, at *20 (S.D.N.Y. Dec. 15, 2004); *see also Lennert–Gonzalez v. Delta Airlines, Inc.*, No. 11 Civ. 1459 (JMF), 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013) (granting summary judgment where plaintiff failed to demonstrate that she was subjected to discriminatory animus rather than mere "personal animus"). Indeed, the law is not a "general civility code," and facially neutral "rude," "derogatory," "unrefined" and "uncivil" comments should not be mistaken for unlawful discrimination. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010); *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

Felty cannot meet her burden of establishing the existence of an objectively hostile work environment. Her claim is based almost entirely on a single interaction that was not severe and was wholly unrelated to her gender.

Felty complains that Cummins generally was argumentative with her, and that he yelled at her during a performance review meeting on March 16 and 17, 2017 (Def. 56.1 ¶¶ 53-61). However, Felty cannot proffer any admissible evidence demonstrating that Cummins yelled at

her or was argumentative with her because of Felty's gender, as opposed to her status as his supervisor, his personal animosity toward her, or any one of a myriad of other potential reasons which are not actionable under Title VII and the NYSHRL.

It is undisputed that Cummins was "argumentative and somewhat aggressive" when receiving constructive criticism (Thompson Decl., Ex. I; Def. 56.1 ¶ 22). His inability to accept constructive feedback was one of the reasons Regeneron placed him on a performance improvement plan in November 2016, (which, significantly, Felty took him off of in February 2017) (Thompson Decl., Exs. I and K; Def. 56.1 ¶ 22, 29-30). His argumentative nature and aggressive behavior also resulted in Regeneron's scheduling of a disciplinary hearing to address his insubordination (Def. 56.1 ¶¶ 81-84; Grady Decl., Exs. P-S). Nevertheless, there is no evidence that Cummins' argumentativeness or aggressiveness was based on some hostility toward female employees and it certainly cannot form the basis for a sexually hostile work environment claim.

Felty speculates that Cummins' insubordination was gender-related based on her alleged observations of his non-argumentative interactions with male co-workers who did not supervise him (Pl. Dep. 105, 114). But, she admits that she does not know what Cummins' intent was in yelling at her, that he was argumentative with all of his supervisors, and that Cummins never reported to a male supervisor at Regeneron (*Id*. at 105-09, 113; Def. 56.1 ¶¶ 103-06). She also admits that Cummins did not make any sexist comments to her during the performance review meeting on March 16 and 17, or at any other time (Def. 56.1 ¶¶ 49, 62).

As Cummins' supervisor, Felty was not similarly situated to Cummins' non-supervisory male colleagues. *See generally, Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (to be "similarly situated" individuals but be similar "in all material respects" including in their

supervisory reporting structure). Thus, the fact Cummins may have been respectful to a colleague that was not providing him constructive feedback, but argumentative with a supervisor who was critical of his work performance is not indicative of any discriminatory bias in the way Cummins treated Felty. Felty's unsubstantiated speculation about Cummins' motives and beliefs is insufficient to support her hostile work environment claim. *See O'Neal v. State Univ. of N.Y.*, No. CIV A CV-01-7802 (DGT), 2006 WL 3246935, at *8 (E.D.N.Y. Nov. 8, 2006) (dismissing hostile work environment claim for lack of non-conclusory evidence where plaintiff argued, but could not demonstrate, "that a discriminatory intent . . . [could] be inferred based on [a] claimed 'differing treatment' of male and female employees").

In any event, Felty also cannot demonstrate that Cummins' argumentative conduct altered the terms and conditions of her employment, because Regeneron took prompt action to separate Cummins from Felty, and to investigate his conduct immediately after Felty complained to Human Resources in March 2017 (Def. 56.1 ¶¶ 63-69). Specifically, following Felty's March 17 complaint to Regeneron's Human Resources Department, Regeneron removed Cummins from an audit he was scheduled to conduct with Felty and instructed Cummins to return to Ireland where he was based (Def. 56.1 ¶¶ 69, 72). Regeneron's Human Resources Business Partners told Felty that she should not assign Cummins any additional work, and ensured that they did not interact in person for the remainder of Felty's employment with Regeneron (Def. 56.1 ¶¶ 67-68). In fact, after her complaint, she never saw Cummins again (*Id.*). On these facts, Felty cannot demonstrate that she was subjected to a working environment that was permeated with discriminatory ridicule and insult. Her hostile work environment claim should be dismissed.

There are only two additional comments that Felty can possibly cite as alleged support for her hostile work environment claim.  But, as argued below, these stray remarks do not add meaningful support to her claim.

First, Felty asserts that in or about mid-January 2017, she traveled with Cummins to an audit in Basel, Switzerland, and during a dinner in Basel with Cummins and another employee Cummins allegedly mentioned his "hotel model girlfriend," whom he said enjoyed the "chains on his bed" (Def. 56.1 ¶¶ 37-38). Felty responded that she was not interested in Cummins' bedroom affairs, and he did not make any additional comments of a sexual nature (Def. 56.1 ¶ 39). Although unsuitable for a work setting, Cummins' alleged comment about his girlfriend's attractiveness and her sexual preferences are not evidence of any gender-based bias on his part. Indeed, Felty admits that the comment did not convey a sexist attitude by Cummins, and that she never heard him make a sexist comment to her or anybody else at Regeneron (Def. 56.1 ¶¶ 34, 42, 49). This single comment does not by itself evidence a hostile work environment. *See McGullam*, 609 F.3d 74, 76 (co-worker's remark about a female friend that "[i]f it wasn't going to be a sleep-over, she wasn't worth the trip," fell "short of the requisite levels of severity or pervasiveness" and "was insufficient as a matter of law to establish a sexually hostile work environment").

Second, Felty asserts that in or about February 2017, Cummins allegedly commented that the thinking or feelings around gays and lesbians in Ireland, where he was from, were different than the United States, that it was not acceptable in his country to be gay, and he felt they did not belong there (Def. 56.1 ¶¶ 43-44). But, Cummins' observation about the state of public opinion around sexual orientation in his country, and his alleged belief that gay individuals do not belong there does not evidence any gender-based discriminatory bias against Felty—a straight woman.

These two alleged remarks, even if joined together, are neither severe nor pervasive. Importantly, Felty did not immediately report either comment, (Def. 56.1 ¶¶ 41, 46), and she does not allege that the comments unreasonably interfered with her working environment. *See Lewis v. N. Gen. Hosp.*, 502 F. Supp. 2d 390, 403 (S.D.N.Y. 2007) (observing that "no reasonable jury could find that the three or four incidents of inappropriate conduct could have unreasonably interfered with [plaintiff's] work performance" because plaintiff "did not even report the alleged sexual harassment until . . . some three weeks after the last of the four incidents"). Furthermore, neither Felty nor Cummins' prior manager, Denise Kemp, ever witnessed Cummins engage in any discriminatory conduct toward another employee based on sexual orientation (Def. 56.1 ¶¶ 48, 50).

Accordingly, Felty does not state an actionable hostile work environment claim under Title VII and the NYSHRL by her allegations that her subordinate employee raised his voice on one occasion and made two arguably inappropriate comments, which were wholly unrelated to her gender and which did not alter the terms and conditions of her work environment in any meaningful manner.

## II.    FELTY CANNOT ESTABLISH THAT SHE WAS SUBJECTED TO UNLAWFUL DISPARATE TREATMENT BASED ON HER GENDER BECAUSE SHE DID NOT SUFFER A MATERIALLY ADVERSE EMPLOYMENT ACTION

To establish her disparate treatment claim under Title VII and the NYSHRL, Felty must proffer evidence that she suffered an adverse employment action under circumstances giving rise to an inference of discrimination. *McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015). She cannot meet this burden.

A.     Felty Did Not Suffer An Adverse Employment Action

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citing *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). For an employment action to be adverse, it must result in a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities. *Id*. Thus, "[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id*. (internal citation omitted).

A plaintiff who is dissatisfied with her employer's investigation into her complaint does not, without more, demonstrate that she suffered a materially adverse employment action. *See Day v. City of New York,* No. 15 CIV. 4399 (GBD) (HBP), 2015 WL 10530081, at *8 (S.D.N.Y. Nov. 30, 2015), *report and recommendation adopted*, 2016 WL 1171584 (S.D.N.Y. Mar. 22, 2016) ("plaintiff's allegation that defendants did not follow their own internal EEO policies when they failed to investigate plaintiff's complaint" was insufficient "to allege an adverse employment action"); *Petyan v. N.Y.C. Law Dep't*, No. 14-CV-1434 (GBD) (JLC), 2015 WL 1855961, at *11 (S.D.N.Y. Apr. 23, 2015), *report and recommendation adopted*, 2015 WL 4104841 (S.D.N.Y. July 2, 2015) ("HR Division's alleged failure to properly investigate Petyan's claim does not constitute an adverse employment action"); *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 379 (S.D.N.Y. 2013) ("To the extent that Plaintiff alleges that Pacifica did not properly investigate his September 2007 complaint, such conduct does not constitute an adverse employment action for purposes of stating a *prima facie* case of employment

9

discrimination"); *Milne v. Navigant Consulting*, No. 08 Civ. 8964 (NRB), 2010 WL 4456853, *8 (S.D.N.Y. 2010) ("failure to investigate a complaint of discrimination cannot be considered an adverse employment action"). Similarly, "once an employee has voluntarily resigned or informed their employer of their intention to resign, the employee cannot suffer an adverse employment action." *Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05 CIV. 6496 (PGG), 2010 WL 1326779, at *10 (S.D.N.Y. Mar. 31, 2010), *aff'd*, 417 F. App'x 81 (2d Cir. 2011).

Here, Felty cannot demonstrate that she suffered any adverse employment action while employed by Regeneron. On the contrary, Felty, who was twice promoted, voluntarily resigned her employment well after Cummins separated from Regeneron, and declined opportunities to transfer to a different position within Regeneron (Def. 56.1 ¶¶ 15, 17, 95, 98-102). She did not suffer any discipline, demotion, diminution in wages, or material reduction in responsibilities. *Galabya*, 202 F.3d at 640.

Felty's meritless criticisms of Regeneron's investigation into her March 2017 complaint to Human Resources, (*see* Compl. ¶¶ 88-96, 105-10, 112-14, 128, 137, 161-73), are insufficient as a matter of law to demonstrate that she suffered a materially adverse employment action. *Day,* 2015 WL 10530081, at *8; *Petyan*, 2015 WL 1855961, at *11; *White*, 973 F. Supp. 2d at 379; *Milne*, 2010 WL 4456853, *8. Cummins, and not Felty, was referred to a disciplinary hearing as a result of Regeneron's thorough investigation (Def. 56.1 ¶ 84; Grady Decl. Ex. R). Felty suffered no adverse consequences as a result of the investigation. Contrary to the allegations in her Complaint, during its investigation, Regeneron ensured that Felty and Cummins had no in-person interaction and limited email interaction (Def. 56.1 ¶¶ 67-69, 72).

Felty also did not suffer an adverse employment action, when, her manger suggested changing a subordinate's reporting structure or when, after she submitted her resignation notice,

the human resources business partner assigned to her department proposed options for altering her existing employment in an effort to change her mind about resigning (Compl. ¶¶ 189-200). *See Ragin*, 2010 WL 1326779, at *10. Fletcher suggested moving one of Felty's subordinates from reporting to Felty to reporting to Fletcher because Felty had expressed her discomfort with the subordinate's involvement in the Cummins investigation and because the employee had some performance deficiencies that made it more difficult to manage him (Fletcher Decl. ¶ 18). The change was merely a suggestion to simplify Felty's work and make her more comfortable. (*Id.*). It was never implemented (*Id.*). Thus, insofar as the change was never implemented and Felty suffered no attendant adverse consequences, Felty cannot demonstrate that she suffered an actionable adverse employment action by the proposal.

Likewise, Grady's unimplemented offer to allow Felty to transfer to a position in the External Manufacturing Department was not an adverse employment action, because Felty had already submitted her resignation notice and she did not accept the transfer (Def. 56.1 ¶ 98-102). She suffered no diminution of wages or demotion from the unaccepted offer.

### B.     Felty Was Not Constructively Discharged From Her Employment

Felty also cannot demonstrate that she was in some manner constructively discharged. "To maintain a constructive discharge claim, a plaintiff must show that her employer, instead of directly discharging her, deliberately made her working conditions so intolerable that she was forced into involuntary resignation." *O'Neal*, 2006 WL 3246935, at *12. This standard requires a showing of "deliberate action on the part of the employer." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 74 (2d Cir. 2000). Mere employer negligence is insufficient. *Id.*

Thus, a "[c]onstructive discharge can be seen as an aggravated case of hostile work environment." *Ferraro v. Kellwood Co.*, No. 03 CIV. 8492(SAS), 2004 WL 2646619, at *7 (S.D.N.Y. Nov. 18, 2004), *aff'd* 440 F.3d 96 (2d Cir. 2006). And, a plaintiff's inability to

demonstrate the existence of an objectively hostile work environment is fatal to a constructive discharge claim. *Chenette v. Kenneth Cole Prods., Inc.*, 345 F. App'x. 615, 620 (2d Cir. 2009) ("Having failed on her hostile work environment claim, 'she can neither survive summary judgment on her constructive discharge claim, which requires evidence of even more severe conditions.'"); *O'Neal*, 2006 WL 3246935, at *12 (dismissing constructive discharge claim based on plaintiff's failure to establish a hostile work environment). Similarly fatal to a plaintiff's constructive discharge claim is evidence that an employer "demonstrated an interest in retaining the plaintiff." *Whidbee*, 223 F.3d at 74.

Here, there are no facts which support a constructive discharge claim. As an initial matter, Felty's constructive discharge claim fails because she has not established that she was subjected to an objectively hostile work environment (*see* Point I above). Even assuming she could demonstrate the existence of an objectively hostile work environment, which Regeneron does not concede, Felty certainly cannot demonstrate that Regeneron deliberately made her working conditions so intolerable that she was forced into involuntary resignation. On the contrary, Regeneron took steps to investigate Felty's complaint and to address her concerns, including entirely eliminating her in-person interactions with Cummins after the March 2017 complaint (Def. 56.1 ¶¶ 67-69, 72). Regeneron also expressed its willingness to continue to employ Felty in her current role or in alternative roles that may have been more desirable to Felty (Def. 56.1 ¶¶ 97-102).

Felty also cannot establish that she resigned her employment out of some fear or concern of having to work with Cummins again. Cummins resigned seven weeks before Felty resigned her employment, and at the time Felty submitted her resignation notice she was aware that Cummins had already separated from Regeneron (Def. 56.1 ¶¶ 88-89, 91-95). Based on these

undisputed facts, Felty cannot meet the high threshold of demonstrating that she was constructively discharged as a result of some deliberate act by Regeneron.

## III.   FELTY'S RETALIATION CLAIMS FAIL AS A MATTER OF LAW.

To establish a *prima facie* case of retaliation under Title VII, the NYSHRL and NYCHRL, Felty must show that: (1) she engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against her; and (4) a causal connection exists between the protected activity and the adverse action. *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 361–62 (S.D.N.Y. 2012). With respect to her federal claim, Felty also must demonstrate that the claimed retaliation was a "but-for" cause of the adverse employment decision. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013). Felty cannot meet this burden.

Felty alleges that she engaged in the following protected activity prior to her separation from employment: (1) in or about February 2017, she reported to her supervisor, Linda Fletcher, her belief that Cummins was treating her differently because she is female (Pl. Dep. 130, 136-40, 142); and (2) in March 2017, she complained to human resources (in person and in writing) about Cummins' behavior and performance (Def. 56.1 ¶¶ 63-66, 78-80). Neither of these allegations supports a claim of retaliation.

### A.   Felty's March 2017 Complaint To Human Resources

To sustain a cognizable claim of retaliation, a plaintiff's communication must put the employer on notice that the plaintiff is complaining about prohibited discriminatory conduct. To do so, the content of the complaint must be clear that the complained of treatment is because of membership in a protected classification. *Malena*, 886 F. Supp. 2d at 363 ("While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition."). Courts are unwilling to impose on employers the burden to deconstruct

13

each employee grievance in search of a complaint of unlawful discrimination. *See id*. at n.6. Thus, generalized workplace complaints are insufficient as a matter of law to demonstrate that an employee engaged in protected activity. *See Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) (dismissing retaliation claim when the plaintiff's "own allegations . . . show instead that while she did complain about certain problems she was having at work, she did not complain that she was being discriminated against on account of her sex").

Here, although Felty complained to Human Resources about Cummins, her complaint was insufficient to put Regeneron on notice that she was complaining about unlawful discrimination as opposed to generalized workplace grievances which are not protected. Felty's written internal "complaint" merely alleged that Cummins did not accept criticism well and performed his job responsibilities poorly. (Def. 56.1 ¶ 79; Grady Decl. Ex. N). Thus, Regeneron's Human Resources Department did not consider Felty's complaint to be a complaint of discrimination (Def. 56.1 ¶ 76). They considered it to be a complaint about the non-discriminatory insubordination of an employee who Felty supervised (*Id.*).

Felty's generalized objections to Mr. Cummins' work performance are not protected complaints of discrimination. In any event, as argued above, Regeneron did not take any adverse action against Felty. Felty's retaliation claim, insofar as it is based on her complaint to Human Resources, must be dismissed.

### B.   Felty's Alleged Complaint To Fletcher

At deposition, Felty asserted for the first time that she complained to Fletcher sometime in February 2017 about discriminatory conduct (Pl. Dep. 166-70). However, Felty did not allege in her Complaint, or in the contemporaneous notes she took during her employment, that she complained about discriminatory conduct to Fletcher in February 2017, or at any other time (*see*

*generally,* Compl.; Pl. Dep. 166-70). Felty's failure to plead this allegation and her failure to amend her complaint to include this allegation should serve as a bar to her assertion at summary judgment that she engaged in protected activity when she purportedly complained to Fletcher. *See Jones v. SEIU Local 1199*, No. 08CV6179-CJS, 2009 WL 5171882, at *12 (W.D.N.Y. Dec. 22, 2009), *aff'd*, 391 F. App'x 979 (2d Cir. 2010) (stating despite the allegations he made at his deposition, Plaintiff elected not to amend his complaint).

Even if the Court accepts that Felty complained to Fletcher in or about February 2017, despite the fact that she did not allege that fact in her Complaint or her contemporaneous notes, Felty's retaliation claim still fails because there is no evidence causally connecting Felty's complaint to Fletcher with any adverse employment action. As argued above, Felty did not suffer any adverse employment action. Felty's retaliation claim should be dismissed in its entirety.

## IV.   FELTY'S NEW YORK CITY HUMAN RIGHTS LAW CLAIMS SHOULD BE DISMISSED BECAUSE SHE DID NOT LIVE OR WORK IN NEW YORK CITY

It is undisputed that Felty did not live or work in New York City during her employment with Regeneron (Def. 56.1 ¶¶ 2, 11, 14). It is also undisputed that none of the alleged discrimination or retaliation occurred in New York City.  (Def. 56.1 ¶¶ 2, 11, 14, 19, 37-39, 43-45, 52, 53). Therefore, Felty's New York City Human Rights Law claims should be dismissed as inapplicable. *See Hoffman v. Parade Pubs.*, 15 N.Y.3d 285, 289, 933 N.E.2d 744, 746 (2010) ("[a]ddressing [plaintiff's] City Human Rights Law claim . . . it is clear from the statute's language that its protections are afforded only to those who inhabit or are 'persons in' the City of New York"); *Fried v. LVI Servs., Inc.*, No. 10–CV–9308, 2011 WL 4633985, at *12 (S.D.N.Y. Oct. 4, 2011) ("The NYCHRL expressly limits the applicability of its protections to acts that occur within the boundaries of New York City") (citing N.Y.C. Admin. Code § 2–201); *see also Robles v. Cox & Co.*, 841 F. Supp. 2d 615, 623 (E.D.N.Y. 2012) (same); *Shah v. Wilco Sys., Inc.*,

27 A.D.3d 169, 175 (1st Dep't 2005) (same); *Wahlstrom v. Metro–North Commuter R.R. Co.*, 89

F. Supp. 2d 506, 527–28 (S.D.N.Y. 2000) (same); *Duffy v. Drake Beam Morin*, No. 96 CIV.

5606 (MBM), 1998 WL 252063, at *11 (S.D.N.Y. May 19, 1998) (same).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for summary judgment should be granted

and the Complaint should be dismissed in its entirety.

Dated:  December 13, 2019
      New York, New York

                                     */s/ Craig R. Benson*
                                     Craig R. Benson
                                     Shawn Matthew Clark
                                     LITTLER MENDELSON, P.C.
                                     900 Third Avenue
                                     New York, NY  10022.3298
                                     212.583.9600
                                     CBenson@littler.com
                                     SMClark@littler.com

                                     *Attorneys for Defendant*

16